UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARNELL LAMONT DICKENS, JR., )<br>)<br>Movant, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Case No.4:05CV2347 CDP |

# MEMORANDUM AND ORDER

Movant Arnell Lamont Dickens, Jr., brings this case under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. Dickens was originally sentenced to an aggregate term of 248 months imprisonment following his plea of guilty to three counts of a multiple count indictment. Criminal Case No. 4:03CR706CDP. He did not appeal. His sentence was later reduced to an aggregate term of 211 months under 18 U.S.C. § 3582(c)(2), because of the retroactive amendments to the crack cocaine sentencing guidelines.

As his grounds for § 2255 relief, Dickens alleges that he received ineffective assistance of counsel, that in light of *United States v. Booker*, 543 U.S. 220 (2005) the sentence was imposed in violation of his sixth amendment right to a jury trial and his rights under the due process clause, and that his guilty plea was not knowingly and voluntarily made. The records in this case conclusively show

that Dickens is not entitled to post-conviction relief, and so I need not hold a hearing on his § 2255 motion. As he has shown no basis for relief under § 2255, I will deny the motion.

## **Background**

Dickens was charged along with fifteen other defendants in a multiple count indictment. He ultimately pleaded guilty to Count I (conspiracy to distribute cocaine base and cocaine), Count IX (possession with intent to distribute cocaine base and cocaine), and Count X (possession of a firearm in furtherance of a drug trafficking crime). He also agreed to forfeit his interest in certain property, including over $60,000 in currency that had been seized from him on different occasions, as well as cars and jewelry.

The plea agreement provided that in exchange for Dickens' plea to Counts I, IX, and X, the government would dismiss Counts II, III, IV, V, VI and VII, and the government would not bring any further federal prosecution related to Dickens' narcotics trafficking or possession of firearms between January 2001 and November 2003. The government also agreed not to seek any enhancement in the sentencing guidelines calculations for Dickens' role in the offense. The parties recommended certain guidelines calculations, and they agreed that Dickens would be sentenced under the guidelines and that neither side would seek a non-

guidelines sentence.

The plea agreement also contained a provision acknowledging that by pleading guilty Dickens was waiving the right to appeal all non-jurisdictional issues related to his guilt. He and the government waived any right to appeal the sentence, unless the court departed from the recommended Sentencing Guidelines. Dickens also waived any right to file a § 2255 motion, except for claims of ineffective assistance of counsel or prosecutorial misconduct. The plea agreement contained an explicit waiver of any right to challenge the "burden of proof on sentencing facts" and "any issue relating to the applicability and validity of the Sentencing Guidelines." Those particular provisions were set out in bold type on page 5 of the plea agreement [criminal case docket entry #360]. On page 22 of the plea agreement, again in bold print, the agreement stated that defendant understood there might be a right to jury trial on sentencing facts, and that defendant understood that by pleading guilty and agreeing to a guidelines sentence he was waiving any such right.

The parties' sentencing guidelines recommendations were that for the drug offenses in Counts I and IX, the base offense level was 38, because Dickens admitted that he was responsible for more than 1.5 kilograms if the drugs were calculated as crack cocaine, or more than 150 kilograms if they were calculated as

powder cocaine. Either of these quantities resulted in a base offense level of 38. The government agreed that Dickens should receive three levels off for acceptance of responsibility, so the total offense level for Counts I and IX was 35. In the plea agreement Dickens acknowledged that the sentence for Count X was required to be five years, consecutive to the other counts.

In the plea agreement, Dickens agreed that he conspired with others to distribute cocaine and crack cocaine. He admitted that he had been intercepted on wiretaps and was heard discussing drug deals in numerous recorded telephone calls. The plea agreement described occasions when Dickens sold cocaine or crack cocaine to cooperating individuals and to others. He admitted that he owned drugs, guns and money that were seized as a result of search warrants executed at several locations associated with him. He also admitted that through ten years of drug activity, he had gradually increased the amounts he sold until he was normally selling two kilograms of cocaine every two or three days, and that he often converted it to crack before selling it. Dickens also admitted that he had knowingly waived his *Miranda* rights and made a lengthy statement to law enforcement officers admitting these facts. He also admitted that the firearms seized were used to protect his drugs and his drug activity.

Dickens was placed under oath at the guilty plea hearing. He stated that he

was satisfied with his counsel's representation, and agreed that he understood he was giving up his rights to appeal all issues related to his guilt as well as the sentence, to challenge the application of the Sentencing Guidelines, and to file a post-conviction motion under § 2255. Dickens admitted under oath that all the statements in the plea agreement were true and that he was guilty of the offenses and was responsible for the guns and quantities of cocaine and crack cocaine listed in the plea agreement.

The presentence report followed the recommendations of the parties and agreed that the total offense level, after acceptance of responsibility, was 35 for counts I and IX. Dickens was in criminal history category II, so his guidelines range was 188 to 235 months for those counts. The report concluded, as expected, that the guidelines range for the gun charge in Count X was 60 months, which must be imposed consecutively, resulting in an aggregate range of 248 to 295 months.

After the plea but before sentencing, Dickens wrote a letter to the court stating that he was dissatisfied with his lawyer and that some of the facts in the plea agreement were not true. The letter acknowledged that he had testified to the contrary at the plea hearing. His counsel requested a continuance of the sentencing hearing so he could discuss these matters further, and ultimately the

sentencing went forward, and defendant did not file any formal objections. At the sentencing I asked Dickens if he had resolved the issues raised in his letter and if he had any further objections. He indicated that, with the removal of a statement from the presentence report that he had purchased drugs from Atlanta, Georgia, there were no further objections and he wished to go forward. I then sentenced him to the bottom of the guidelines range that had resulted from the recommendations made by the parties. That sentence was 188 months on Counts I and IX and 60 months on Count X, for an aggregate sentence of 248 months.

When the sentencing guidelines regarding crack cocaine were later amended and made retroactive, Dickens filed a *pro se* motion to reduce the sentence under 18 U.S.C. § 3582(c)(2). I appointed William Ekiss, who had been his defense counsel throughout the case, to represent him on the motion to reduce sentence and Ekiss filed an amended motion. After the government filed a statement that it did not object to the reduction, I granted the motion. Under the amended guidelines, Dickens' total offense level on Counts I and IX became 33, so his guidelines range for those two counts was 151 to 188 months. I reduced the sentence on Counts I and IX to 151 months, which lowered his aggregate sentence to 211 months [docket # 554]. Dickens filed another *pro se* motion to reduce sentence under 18 U.S.C. § 3582 in November of 2008, arguing that his sentence

should be reduced because of Sentencing Guidelines Amendment 709, which changed the manner of counting certain prior convictions. I denied that motion, because Amendment 709 has not been made retroactive [docket # 574].

**Discussion**

Dickens raises six grounds for habeas relief in his motion. He filed a 104 page memorandum in support of his motion. The first, fifth, and sixth grounds raised in the motion are claims of ineffective assistance of counsel, and I will discuss those below. The second claim argues that his sixth amendment rights were violated under *United States v. Booker*, 543 U.S. 220 (2005), and the third claim argues that his due process rights were violated for the same reason. His fourth claim is that his guilty plea was not knowing or voluntary, and alleges that he did not understand that the purpose of the plea agreement "was to incriminate him by requiring the admission of having dealt in large quantities of drugs, the quantities which were estimated." Because Dickens waived his right to habeas relief in his plea agreement and because his waiver was voluntarily and intelligently made, I will dismiss those grounds without further discussion.[1]

---

[1]Dickens was sentenced on December 17, 2004, and the Supreme Court decided *Booker* on January 12, 2005. Much of Dickens' lengthy memorandum is devoted to arguing that the Court mistakenly treated the guidelines as mandatory. But everyone in the process knew both at the time of Dickens' plea and at sentencing that *Booker* was under consideration by the Supreme Court, and it was because of that, and because of the decision in *Blakely v. Washington*, 542 U.S. 296 (2004), that the parties included, in bold print, the portion of the plea agreement stating that

Dickens makes three interrelated claims of ineffective assistance of counsel: (1) counsel should not have advised him to plead guilty and to waive appeal and withdraw his suppression motions; (2) counsel should not have "abandoned" the motion to suppress Dickens' post-arrest confession; and (3) counsel should not have "abandoned" the motion to suppress the evidence obtained from Title III wiretaps.

The Sixth Amendment establishes the right of the criminally accused to have the assistance of counsel in his defense. The United States Supreme Court has further recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order for a convicted defendant to prove that his counsel was ineffective, he must first show that counsel's performance was deficient. This showing of deficiency requires that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of an attorney's performance must be highly deferential, and the courts employ a strong presumption that counsel's

---

Dickens understood he was giving up his right to raise these arguments. Dickens stated at the plea that he fully understood these waivers.

- 8 -

conduct fell within the wide range of reasonable professional assistance. Second, in order to prove ineffective assistance of counsel, a defendant must show prejudice as a result of counsel's ineffectiveness. A defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). To show ineffective assistance of counsel in the context of a guilty plea, a movant must establish: (1) counsel's performance fell below the *Strickland* standard of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty but would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985).

Dickens has not shown that his counsel's representation fell below a reasonable level of professional assistance. Most of his arguments are flatly contradicted by the court records. I have read the motion and memorandum, as well as the government's comprehensive response, and have reviewed the record in the criminal case. I have also considered the affidavit of defense counsel filed as an attachment to the government's response, which provides evidence entirely consistent with the court record, and which refutes the unsworn allegations of Dickens' lengthy memorandum.

Both the motion and memorandum claim that counsel was ineffective for failing to litigate motions to suppress related to (1) the confession that Dickens made after the execution of the search warrants, and (2) the evidence gathered by Title III wiretaps. Dickens' motion and memorandum imply that counsel made the decision to waive motions on his own, but Dickens himself actually waived his right to file pretrial motions twice in open court. As stated above, he explicitly waived litigation of pre-trial motions in his guilty plea, but even before that Dickens had appeared before Magistrate Judge David D. Noce and orally waived his right to file motions. Additionally, his counsel filed a written withdrawal of the motions that had been filed previously. At the hearing before Judge Noce, the Judge explained Dickens' right to litigate motions, and Dickens told Judge Noce that he understood that right and was voluntarily waiving it.[2]

As to his confession, Dickens' memorandum argues that he was so intimidated by the law enforcement agents that "he began answering their

---

[2]Docket entry # 242 in the criminal case incorrectly indicates that co-defendants "William Jason Everett, Phillip G. Scott, *Stanford Anthony Dickens*, Richard Lamore Jones" waived motions on April 5, 2004. The actual minute sheet in the court file, however, reflects that it was this defendant, movant Arnell Lamont Dickens, *not* Stanford Dickens, who was the subject of the hearing on that date. The minute sheet also shows the appearance of "Bill Ekiss," who was Arnell Lamont Dickens' defense counsel. I have listened to the recording of the hearing, and verified that movant Arnell Lamont Dickens and counsel William Ekiss were the actual participants. The written waiver filed by counsel Ekiss appears at docket entry # 238, filed on April 3, 2004. Co-defendant Stanford Dickens actually appeared before Judge Noce the following day, April 6, 2004, and waived motions at that time. [docket entry #245].

questions out of fear, and without understanding that he was making admissions that would result in a significantly longer sentence." But in his guilty plea, Dickens contradicted this, and admitted that he made the statements voluntarily and after being advised of his right to remain silent. Defense counsel's affidavit establishes that Dickens told him – when he sought advice after the execution of the search warrants several months before the indictment was returned – that he had made these statements knowing he was incriminating himself. He told counsel he did so because he knew he was caught and wanted to try to help himself as much as possible. Under these circumstances, counsel's performance did not fall below objective standards of reasonableness.

With regard to the wiretaps, counsel's affidavits establish that he had reviewed the applications for the wiretaps, and believed that any motions challenging them would be frivolous and could hamper any efforts at negotiation of a plea. This was a strategic decision made by defense counsel, after discussion with Dickens. Dickens now claims that the wiretap applications were insufficient because the government had been successful in making controlled buys from him, and so the requirement of 18 U.S.C. § 2518(1)(c) that the government show that conventional investigative means are insufficient was not met. The purpose of this requirement is to assure that wiretaps are not "routinely employed as the initial

step in an investigation." *United States v. Maxwell*, 25 F.3d 1389, 1394 (8th Cir. 1994); *see also United States v. Shaw*, 94 F.3d 438, 441 (8th Cir. 1996). The cases make clear, however, that the government "is simply not required to use a wiretap only as a last resort." *United States v. Macklin*, 902 F.2d 1320, 1327 (8th Cir. 1990). The wiretaps were not sought in this case as the "initial step" in the investigation, but instead were sought after many other investigative steps had been taken. Those other steps had provided some evidence, but not enough to prove the scope of the conspiracy. Counsel was not ineffective for failing to raise what would have been a frivolous motion to suppress.

Dickens also argues that counsel was ineffective for failing to argue the unconstitutionality of the sentencing guidelines. Counsel's affidavit shows, as does the plea agreement and colloquy, that defendant understood that he was giving up the right to make these arguments, and that doing so was part of a strategic decision to negotiate a more favorable plea agreement.

The evidence against Dickens was strong. As Dickens admitted at the plea, the government had seized more than 500 grams of crack and more than 500 grams of cocaine from people who had just purchased the drugs from Dickens. A half kilogram of cocaine was seized from the house of a woman who was the mother of one of Dickens' children, and Dickens admitted this was his cocaine.

Guns, drugs, and money were seized from Dickens' mother's and sister's houses and from Dickens' storage locker, and he admitted that these were all his. His voice was heard on numerous wiretaps discussing drug transactions. Over $50,000 in cash was seized from Dickens and one of his co-defendants shortly after they were heard on the wiretaps discussing meeting to make a drug payment. Finally, of course, defendant made very incriminating statements, admitting to the agents that he was a major drug dealer and that he kept guns to protect himself from other people in the drug business.

Counsel's affidavit sets out various considerations leading to the negotiated plea in the case. The government took the position (as is common in this district), that if the defendant litigated pretrial motions and later plead guilty, it would not file a motion to allow defendant to obtain the third level available under U.S.S.G. § 3E1.1(b) for acceptance of responsibility. Of course, had defendant chosen to litigate his guilt and all these other issues, he would not have received any levels off for acceptance of responsibility. Additionally, in exchange for the defendant's plea and his various waivers, the government agreed not to seek a four-level increase for Dickens' role in the offense under U.S.S.G. § 3B1.1(a). If four levels for his role in the offense had been added to defendant's base offense level of 38, and no levels had been deducted for acceptance of responsibility, defendant's

sentencing guidelines range would have been 360 to life just on the drug counts. When the five year mandatory consecutive sentence for the gun charge is added, the minimum guidelines sentence would have been 420 months, or 35 years. Even if Dickens had been sentenced after the *Booker* decision, he would undoubtedly have received a much longer sentence than the 248 month sentence he initially received as a result of his plea negotiations.

Counsel was not ineffective in any respect. His affidavit establishes that he had many lengthy meetings with Dickens, both before the indictment was returned and throughout the pendency of the case. He investigated the issues, reviewed the extensive discovery materials, and negotiated a favorable resolution. Throughout the process he discussed the case with Dickens and informed him of his options. Movant has merely shown that he wishes he could have gotten a lower sentence, which is certainly understandable, but that does not mean that his counsel was ineffective or that he is entitled to relief under § 2255. The records here conclusively show that there is no basis for granting relief, so I will deny the motion.

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief."

*Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id*. (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)). Because the records here conclusively show that Dickens is not entitled to relief as a matter of law, I need not hold a hearing.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to vacate, set aside or correct sentence [#1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as movant has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accord with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2009.